The Honorable Patrick Oishi

## STATE OF WASHINGTON
## SUPERIOR COURT OF WASHINGTON FOR THE COUNTY OF KING

| | |
|---|---|
| HUNTERS CAPITAL, LLC; HUNTERS PROPERTY HOLDINGS, LLC, AND GREENUS BUILDING, INC. | Case No. 21-2-06780-4 SEA |
| Plaintiffs, | **HUNTERS CAPITAL'S FIRST AMENDED COMPLAINT** |
| v. | |
| THE HANOVER AMERICAN INSURANCE COMPANY, | |
| Defendant. | |

## I.      PARTIES

1.      Hunters Property Holdings, LLC ("HPH") is a Washington limited liability company. HPH is the sole member of the following single-asset limited liability companies: Dunn Automotive Building, LLC, Lots II, LLC, 900 E. Pine, LLC, Moore Family Building, LLC, Pike Building, LLC, Ballou Wright Building, LLC and Colman Automotive, LLC (collectively "the LLCs"). The LLCs are the owners of properties insured at all relevant times by Hanover Insurance Company. The members of HPH are citizens of New York, California, and Washington.

2.      Greenus Building, Inc., was incorporated in Washington and has its principal place of business in Washington. Greenus Building, Inc. is the sole owner of the Greenus Building, a property insured by Hanover Insurance Company at all relevant times.

HUNTERS CAPITAL'S FIRST
AMENDED COMPLAINT - 1

4839-2107-5157.3

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

3.     Plaintiff Hunters Capital, LLC ("HC") is a Washington limited liability company. HC acts as the agent for HPH, the LLCs, and Greenus Building, Inc. In its capacity as agent, HC is responsible for leasing, maintaining, securing insurance for and the financial administration of the properties insured by Hanover Insurance Company. The only member of HC is Michael Malone, a citizen of Washington. HC, HPH, and Greenus Building, Inc. are collectively referred to herein as "Hunters Capital."

4.     Defendant The Hanover American Insurance Company ("Hanover") is a corporation organized and existing under the laws of the state of Delaware with its principal place of business at 440 Lincoln Street, Boston, MA 01653-1000. At all times material to this complaint, Hanover was conducting business in King County, Washington.

## II.     JURISDICTION AND VENUE

5.     The Court has jurisdiction over the parties and subject matter of this action.

6.     Venue is proper in King County, Washington.

## III.     FACTS

7.     Hunters Capital manages and operates a number of commercial and mixed-use properties located in and around the Capitol Hill neighborhood of Seattle, Washington. At all times material to this lawsuit, those properties were insured by Hanover pursuant to all-risks "commercial property coverage" contained in policy ZZ2 D241525 03 (the "Policy").

8.     The Policy contains a "Business Income (and Extra Expense) Coverage Form" in which Hanover promises to pay Hunters Capital for loss sustained as a result of the slowdown or cessation of business activities caused by direct "physical loss of or damage to" the insured properties. The Policy is written on all-risks basis, meaning that any peril not excluded provides coverage. In addition, the Policy specifically makes "riot," "civil commotion", "smoke", and "vandalism" covered causes of loss for the purposes of business income loss coverage.

9.     Property coverage under the Policy is broadened through various endorsements marketed and sold by Hanover as significantly enhancing coverage, including a "Gold Property

HUNTERS CAPITAL'S FIRST
AMENDED COMPLAINT - 2

4839-2107-5157.3

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

1    Broadening Endorsement" and a "Real Estate Property Broadening Endorsement." The Policy,

2    alone and in conjunction with these and other endorsements, provides numerous additional

3    coverages. These include, but are not limited to: losses caused by action of civil authority,

4    physical loss or damage to dependent properties, covered emergencies such as attempted or

5    threatened violent acts, denial of access to premises, lease cancellation due to untenantability,

6    and tenant replacement expense.

7         10.    Beginning in approximately May 2020, Seattle's Capitol Hill neighborhood

8    became the scene of ongoing civil unrest, commotion and protests, arising out of, among other

9    things, the murder of George Floyd and the conduct of the Seattle Police Department. The

10   protesters were met by police in riot gear. Tear gas, flashbangs and pepper spray were employed

11   to quell the commotion. On June 7, 2020, a man drove his vehicle into a crowd of protesters and

12   began shooting.

13        11.    On June 8, 2020, Seattle police reported that crowds were throwing rocks, bottles,

14   and fireworks, and shining lasers into officers' eyes. Protesters barricaded and took over a six-

15   block area of Capitol Hill, declaring it an "autonomous zone." Police boarded up the East

16   Precinct building in the protest area and abandoned it, abdicating responsibility for protecting

17   citizens and property from the unrest. The precinct's desertion came after Seattle's Mayor, Jenny

18   Durkan, ordered the removal of protest barriers near the East Precinct.

19        12.    The autonomous zone taken over by protesters came to be known as the Capitol

20   Hill Occupied Protest ("CHOP"). The CHOP occupation created obstructions which prevented

21   access to the premises owned and operated by Hunters Capital, its tenants and/or their customers

22   both within the CHOP zone and in the nearby vicinity. Masked protesters, some carrying guns,

23   roamed the streets, smashing windows and looting. Seattle police would not respond to calls for

24   help in the area while, simultaneously, paramedics with the Seattle Fire Department would not

25   respond to calls without a police escort. During June, there were at least four shootings in the

26   CHOP zone, two of them fatal. On June 24, 2020, a group of Capitol Hill businesses and

HUNTERS CAPITAL'S FIRST
AMENDED COMPLAINT - 3

4839-2107-5157.3

residents affected by the occupation sued the City of Seattle for its "unprecedented decision to abandon and close off an entire city neighborhood, leaving it unchecked by the police, unserved by fire and emergency health services, and inaccessible to the public at large."

13.     Protestors within the CHOP zone and in the nearby vicinity repeatedly looted Hunters Capital's properties and damaged them, including graffiti, broken windows, and other physical damage. In one case, a bullet went through a commercial tenant's office space and was found lodged in the ceiling. When Hunters Capital attempted to resolve the damage, protestors informed Hunters Capital's workers that if they proceeded, the protestors would burn down Hunters Capital's buildings. Countermeasures by police, when they occurred, resulted in tear gas and smoke migrating into Hunters Capital's tenant's homes and businesses.

14.     Hunters Capital's employees, tenants and residential residents were repeatedly threatened by CHOP inhabitants/participants/protesters. The ongoing and dangerous riot/civil commotion, intimidation, harassment, and its accompanying physical damage to Hunters Capital's insured premises caused many of Hunters Capital's commercial tenants (and their patrons) and residential tenants to abandon the area.

15.     Property Claims Services ("PCS"), a service that assists the insurance industry in identifying, tracking and managing catastrophic incidents, declared the CHOP zone protests to be a "catastrophe" from the period May 26 to June 8, 2020. PCS's declaration reflects its determination that property damage losses from the catastrophe are likely to exceed $25,000,000.

16.     On or about August 6, 2020, Hunters Capital submitted a notice of loss or claim (the "Claim") to Hanover, seeking reimbursement under the Policy for costs to repair property damage to its premises caused by the civil commotion, riot, vandalism, and occupation of the CHOP zone, as well as business income loss and extra expense caused by the same.

17.     Upon receipt of the Claim, Hanover assigned an "adjuster consultant" in Ohio to determine coverage under the Policy. Although the adjuster, Steven Morris, had no familiarity with the CHOP zone or the civil commotion crisis in Seattle, he immediately informed Hunters

HUNTERS CAPITAL'S FIRST
AMENDED COMPLAINT - 4

4839-2107-5157.3

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

1    Capital that he did not believe there would be any business income loss coverage. Then, rather

2    than request an objective coverage analysis from outside claims counsel familiar with

3    Washington law, Mr. Morris sought to justify his position that there was no business income loss

4    coverage by seeking input from the Property & Liability Resource Bureau ("PLRB") in Downers

5    Grove, IL, a trade association serving casualty insurance companies and underwriters. Mr.

6    Morris's correspondence to the PLRB does not attempt even a pretext of neutrality: it flatly

7    states Hanover's belief that no business income loss coverage to Hunters Capital was owed.

8         18.    In its response to Mr. Morris, PLRB concluded (1) that civil authority coverage

9    "likely" did not apply because the City's abandonment of the CHOP zone in response to

10    protesters barricading the area "arguably" fell short of "an action of civil authority" that would

11    trigger coverage and (2) that Washington courts "might not" consider Hunters Capital's loss of

12    use of the properties it manages to constitute a "physical loss" that would trigger coverage.

13    PLRB did conclude that denial of access to premises coverage "might be" applicable because

14    property damage caused by protesters had hindered, and in cases prevented, the ability of

15    Hunters Capital's employees and its tenants to access the premises.

16         19.    With nothing but the equivocal conclusions of PLRB to rely upon, Hanover

17    denied Hunters Capital's business income loss and extra expense claim in its entirety. Hanover's

18    denial letter attempted to justify its decision by arguing that the Policy's insuring clause was not

19    triggered unless damage rendered the premises "untenantable," an undefined term in the Policy

20    only relevant to one of the two definitions of "suspension." Hunters Capital's tenant replacement

21    expense loss was denied on a similar untenantability rationale.

22         20.    Notwithstanding PLRB's advice that denial of access coverage may apply,

23    Hanover also denied that aspect of the Claim. Hanover did not even consider whether extended

24    business income loss coverage might be owed, or whether coverage was owed under any other

25    portion of the Policy. In short, other than accepting some of Hunters Capital's Claim for

26    expenses incurred to repair physical damage to the insured premises, Hanover denied Hunters

HUNTERS CAPITAL'S FIRST
AMENDED COMPLAINT - 5

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

Capital's Claim outright.

21.     The legal premise for Hanover's denial—that a policyholder cannot suffer "direct physical loss of" property unless the property is structurally altered/physically damaged—has already been rejected by Washington courts. *See Perry Street Brewing Co. v. Mutual of Enumclaw Ins. Co.*, No. 20-2-02212-32, (Wash. Super. Ct. Nov. 23, 2020) (attached as Exhibit A); *Hill and Stout v. Mutual of Enumclaw Ins. Co.*, No. 20-2-07925-1-SEA (Wash. Super. Ct. Nov. 13, 2020) (attached as Exhibit B); *see also Nautilus Grp., Inc. v. Allianz Glob. Risks US*, 2012 WL 760940 (W.D. Wash. Mar. 8, 2012) (rejecting insurer's argument that business income loss triggered by direct physical loss of or damage to property "requires proof that the property at issue has been physically altered.").

22.     Not only does the premise for Hanover's denial lack any legal support, it lacks any factual support as well. Hunters Capital's buildings were structurally altered/physically damaged, its tenants were physically denied the use of their spaces, and public and private property (including Hunter Capital's insured properties) inside and around the CHOP zone were under relentless physical attack for weeks.

23.     Hunters Capital relied on the bases set forth in Hanover's denial letter in bringing this litigation.

## IV.     FIRST CAUSE OF ACTION: BREACH OF CONTRACT

24.     Hunters Capital repeats and realleges each and every preceding paragraph as though fully set forth herein.

25.     Hanover's actions and omissions as described herein constitute breaches of the Policy.

26.     Hunters Capital has been damaged by Hanover's breach of contract in an amount to be proven at trial, but not less than $3,270,608.11.

## V.     SECOND CAUSE OF ACTION: BAD FAITH

27.     Hunters Capital repeats and realleges each and every preceding paragraph as

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

1   though fully set forth herein.

2      28.      Hanover's actions and omissions as described herein were/are unreasonable and,

3   therefore, in bad faith.

4      29.      As a result, Hunters Capital has been directly and proximately damaged by

5   Hanover's bad faith in an amount to be proven at trial, not less than $3,270,608.11.

6
7          **VI.      THIRD CAUSE OF ACTION: PER SE AND NON PER SE CPA**
                                  **VIOLATIONS**

8      30.      Hunters Capital repeats and realleges each and every preceding paragraph as

9   though fully set forth herein.

10     31.      Hanover's acts and omissions as described above violated multiple provisions of

11  WAC 284-30-330 including, but not limited to, subsections (4), (7) and (13); such violations are

12  per se violations of RCW 19.86, Washington's Consumer Protection Act (the "CPA").

13     32.      Hanover's acts and omissions, as pled above, also constitute non per se violations

14  of the CPA.  Such unreasonable acts and omissions were unfair or deceptive, occurred in trade or

15  commerce, and affected Washington's policyholders and the public interest.

16     33.      Such unfair or deceptive acts or omissions directly and proximately caused and

17  continue to cause Hunters Capital to suffer damages in an amount to be proven at trial.  These

18  damages include, but are not limited to, the deprivation of policy benefits owed to Hunters

19  Capital and the costs associated with bringing this action for coverage, including court costs and

20  attorney fees.

21     34.      Hunters Capital is entitled to recover its actual damages and attorneys' fees, as

22  well as treble damages up to $25,000 per violation, pursuant to RCW 19.86.090.

23       **VII.      FOURTH CLAIM FOR RELIEF: INSURANCE FAIR CONDUCT ACT**
                                  **VIOLATION**

24     35.      Hunters Capital realleges and incorporates by reference each and every preceding

25  paragraph.

26

HUNTERS CAPITAL'S FIRST
AMENDED COMPLAINT - 7

4839-2107-5157.3

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

36.     Pursuant to RCW 48.30.015(8), Hunters Capital sent notice to Hanover of Hunters Capital's intent to assert a cause of action against Hanover under the Insurance Fair Conduct Act ("IFCA") on May 21, 2021.

37.     Hanover failed to resolve Hunters Capital's claim within the 20-day statutory period.

38.     As such, Hunters Capital has met its statutory obligations under IFCA.

39.     Hanover is liable under IFCA for, among other things: failing to conduct a reasonable investigation into the Claim; compelling Hunters Capital to initiate litigation to recover amounts due to it under the Policy; failing to reasonably connect the Policy language, on which the denial relies, to the facts of the Claim and the controlling law; and for unreasonably denying Hunters Capital's claim, and all policy benefits.

40.     Hanover's acts and omissions in violation of IFCA have proximately and directly caused and continue to cause Hunters Capital to suffer damages in an amount to be proven at trial.

41.     Hunters Capital is entitled to recovery for its actual damages, attorney fees, litigation costs, and expert witness fees pursuant to RCW 48.30.015(3).

42.     The jury may award up to three times Hunters Capital's actual damages pursuant to RCW 48.30.015(3).

**VIII.   FIFTH CAUSE OF ACTION: DECLARATORY RELIEF**

43.     Hunters Capital repeats and realleges each and every preceding paragraph as though fully set forth herein.

44.     There is a ripe justiciable dispute between Hunters Capital and Hanover concerning their respective rights and obligations under the Policy. Accordingly, Hunters Capital seeks declaratory relief on, at a minimum, the following topics:

A.     A declaration that the Claim is covered under the Policy, including but not limited to under the Policy's Business Income and Extra Expense coverage;

HUNTERS CAPITAL'S FIRST
AMENDED COMPLAINT - 8

4839-2107-5157.3

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

1    B.    A declaration that Hanover unreasonably denied coverage;

2    C.    A declaration that Hanover failed to conduct a reasonable investigation of

3    the Claim;

4    D.    A declaration that Hanover's acts and omissions violated Washington's

5    Consumer Protection Act;

6    E.    A declaration that Hunters Capital is liable under IFCA for its conduct as

7    alleged herein; and

8    E.    A declaration that Hanover is limited to asserting those coverage defenses

9    set forth in its December 1, 2020 coverage denial letter.

10    ## IX.    REQUEST FOR RELIEF

11    WHEREFORE, Hunters Capital prays for judgment in their favor against Hanover as

12    follows:

13    1.    For damages for the causes of action listed above in an amount to be proven at trial,

14    not less than $3,270,608.11;

15    2.    For declaratory relief, as described above;

16    3.    For an award of attorneys' fees, expert costs, and other costs incurred in bringing

17    this action;

18    4.    For treble damages under the Consumer Protection Act up to the statutory

19    maximum;

20    5.    For treble damages under IFCA; and

21    6.    For pre- and post-judgment interest;

22    7.    For such other and further relief as the Court deems appropriate.

23    //

24    //

25    //

26    //

HUNTERS CAPITAL'S FIRST
AMENDED COMPLAINT - 9

4839-2107-5157.3

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

1  DATED this 25th day of June, 2021.

2                                    s/ Tristan N. Swanson
                                     Tristan N. Swanson, WSBA No. 41934
3                                    K. Michael Fandel, WSBA No. 16281
                                     MILLER NASH LLP
4                                    Pier 70 ~ 2801 Alaskan Way, Suite 300
                                     Seattle, WA 98121
5                                    Telephone: (206) 624-8300
                                     Fax: (206) 340-9599
6                                    Email: Tristan.swanson@millernash.com
                                     Email: Michael.fandel@millernash.com
7
8                                         Attorneys for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

HUNTERS CAPITAL'S FIRST
AMENDED COMPLAINT - 10

4839-2107-5157.3

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA 98121-1128
206.624.8300 | Fax: 206.340.9599